# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| J. Randall Poff, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:20-CV-214-JD |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security | ) ) ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

J. Randall Poff applied for disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to cubital tunnel syndrome in his right arm. Mr. Poff was found to be not disabled in a May 2019 decision. Mr. Poff then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Despite being granted an extension of time, Plaintiff did not file a reply. As explained below, the Court affirms the Commissioner's decision.

**I.**    **Factual Background**

Until he stopped working, Mr. Poff worked as a contracted driver for the United States Postal Service. Mr. Poff suffers from status post right ulnar nerve decompression surgery secondary to mild to moderate ulnar neuropathy/cubital tunnel syndrome, complex regional pain syndrome ("CRPS"), and obesity. (R. 17).

Mr. Poff applied for benefits in 2017. He alleges disability starting September 27, 2017, and he meets the insured status requirements of the Social Security Act through December 31, 2022. (R. 17). The ALJ issued an unfavorable decision on May 22, 2019. In that decision, the

1

ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, and crouch, he can never crawl, he can never reach overhead with the right dominant upper extremity, he can occasionally handle, finger and feel with the right dominant upper extremity, and he should avoid concentrated exposure to unprotected heights and unguarded moving machinery.

(R. 21). Finding that Mr. Puff can perform other work in the economy, the ALJ found that he is not disabled. The Appeals Council declined review, and Mr. Puff filed this action seeking judicial review of the Commissioner's decision.

## II. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does

not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. Discussion

Mr. Poff offers one argument in support of reversal. He argues that the ALJ erred in evaluating his subjective symptoms and daily activities. An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The regulations require the ALJ to look at a

variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of his pain on his ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

In discussing Mr. Poff's allegations of pain, the ALJ found that those allegations are inconsistent with the medical record. (R. 18). The ALJ noted that although Mr. Poff testified to pain and immobility in his neck due to cervical fusion, the medical record shows mild decreased neck motion in one visit and full range of motion at the consultative physical examination. (R. 18). Further, treatment notes from his primary care physician did not indicate any neck pain or limited range of motion. (R. 18). The ALJ also noted that although Mr. Poff claimed debilitating migraine headaches, he did not receive any treatment for his headaches. (R. 18). The ALJ found that "the evidence is insufficient to establish headaches, migraine or otherwise, that occur with a frequency or severity that would more than minimally affect work-related activities." (R. 18). The ALJ also found that objective findings are inconsistent with Mr. Poff's claims that he cannot use or lift his right arm, and that he has not maintained treatment since early 2018. (R. 25). The ALJ also noted that there is no evidence that Mr. Poff pursued physical therapy. (R. 25). There is no evidence in the record to indicate that Mr. Poff's lack of treatment could be explained by a lack of insurance or limitations related to his impairments.

In discussing Mr. Poff's mental impairment subjective symptoms, the ALJ notes that Mr. Poff did not seek mental health treatment "until recently," and that the records reflect improvement with the treatment he was receiving. (R. 20). The ALJ also found that the treatment records fail to support Mr. Poff's testimony regarding needing to stay in bed or on the couch multiple times per week due to depression or anxiety. (R. 20). The ALJ looked to records that showed intact attention and focus, normal speech and thought processes, associations, and content, and normal intelligence. (R. 20). The ALJ further found that Mr. Poff's ability to plan a

graduation party suggests increased motivation, and that "the record as a whole fails to reflect objective findings that would support more than mild limitations with workplace interactions." (R. 20). The ALJ relied on portions of Dr. Boen's August 2018 opinion and the state agency physician opinions to support her finding that Mr. Poff had no more than mild limitations in any of the paragraph b functional areas, and therefore found Mr. Poff's mental impairments to be non-severe. (R. 20-21). Dr. Boen opined that Mr. Poff would have no mental health limitations, and that he would not have trouble or difficulties understanding what he was asked to do, remembering what he was asked to do, being able to concentrate, being able to stay on task, or being able to get along with coworkers and bosses. (R. 386).

Mr. Poff asserts that the ALJ impermissibly relied on daily activities in discrediting his subjective symptoms. The Seventh Circuit has cautioned that a person's ability to perform daily activities does not necessarily translate to an ability to work full-time, especially if the daily activities can only be done with significant limitations. See *Bjornson v. Astrue*, F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). Daily activities are a proper factor for an ALJ to consider, though, and when those activities are not consistent with a claimant's testimony about his limitations, an ALJ can take that into account. *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013).

First, Mr. Poff argues that the ALJ impermissibly relied on a statement from his psychiatrist, Dr. Rustagi, who reported that Mr. Poff was capable of completing daily activities despite feeling unmotivated. (R. 461). Mr. Poff asserts that the ALJ included this statement in the analysis of his mental impairments without analyzing it, and that this amounts to impermissibly equating his ability to complete daily activities with the ability to work full time. (R. 20).

However, the ALJ included this statement in her discussion of the evidence, not in her analysis of Mr. Poff's subjective symptoms. As part of her recitation of the evidence, the ALJ listed the information provided in the first two treatment notes with Dr. Rustagi in December 2018 and January 2019. The ALJ provided no analysis here because she was simply laying out the objective medical evidence as provided by Dr. Rustagi. The ALJ did not rely on daily activities at all in discussing why she discredited Mr. Poff's subjective symptoms. (R. 20). Instead, the ALJ pointed to Dr. Rustagi's treatment records and Mr. Poff's reported improvement during his short treatment. (R. 20). Discussing that Mr. Poff reported being capable of completing daily activities despite feeling unmotivated is not equating daily activities with the ability to work full time. Instead, the ALJ simply noted that Mr. Poff was, by his own admission, capable of completing daily activities even when he was unmotivated, and that this information was reported by his treating doctor. This was only a small portion of her larger discussion of Mr. Poff's mental impairments. The ALJ may mention daily activities so long as she does not equate them with the ability to work full time, and the ALJ did not do so here. *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013).

Similarly, Mr. Poff takes issue with the ALJ mentioning his ability to plan a graduation party for his children. The ALJ stated that Mr. Poff's ability to plan the graduation party suggested increased motivation, and greater motivation than he testified to at the hearing. (R. 20). Mr. Poff asserts that this statement does not account for the complexity of planning a graduation party, nor does it explain at what pace planning was performed. However, as discussed above, the ALJ did not equate Mr. Poff's ability to plan a graduation party with the ability to work full time. Instead, the ALJ found that the ability to plan a party suggested increased motivation that contradicted his testimony. (R. 20). The ALJ did not improperly rely

on the ability to plan a graduation party in finding it suggested increased motivation. The ALJ's finding that Mr. Poff's ability to plan a graduation party suggested increased motivation was only a small part of her overall analysis of his subjective symptoms. Moreover, Mr. Poff does not argue that the ALJ erred in finding that his mental impairments were not severe or in finding no more than mild limitations in all of the paragraph b criteria. Therefore, even if the ALJ erred in discussing Mr. Poff's ability to plan a graduation party, such an error is harmless[1], as the result would still be a finding of no more than mild limitations and a non-severe impairment. *Kolesar v. Shalala*, No. 93-c-3834, 1994 WL 30544, at *11 (N.D. Ill. Feb. 3, 1994) ("Harmless errors are those that do not affect the ALJ's determination that a claimant is not entitled to benefits.").

Mr. Poff also provides a two-sentence argument asserting that the ALJ failed to take his difficulty sleeping into account in formulating the RFC. Mr. Poff offers two statements he made about his pain at the hearing, and then he argues that the ALJ "must explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." [ECF 26 at 26](citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). However, Mr. Poff has not explained either how his statements are supported by the evidence or how the ALJ erred in her analysis. Mr. Poff has provided no evidence or explanation as to what was improper in the ALJ's decision. This argument is underdeveloped and therefore waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel I. H. v. Colvin*, No. 12 C 9173, 2014 WL 114173, at *11 (N.D. Ill. 2014) (applying *Berkowitz* to underdeveloped arguments in a Social Security appeal). "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."). *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Mr. Poff has made no argument that his alleged struggles with sleeping required further limitations, nor has he

---

[1] The Seventh Circuit has held that the doctrine of harmless error is applicable to Social Security disability appeals. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003).

provided any evidence to support that his sleeping struggles require limitations in the RFC. This argument is underdeveloped and therefore waived.

Finally, Mr. Poff argues that the ALJ erred in analyzing his symptoms of pain. Mr. Poff asserts that the evidence supports his allegations of pain, including his work history, his surgical history, and his treatment regimen. Once again, Mr. Poff makes no argument as to how the ALJ erred in the treatment of this evidence outside of a vague statement that the ALJ improperly relied on daily activities. In the main body of his argument, Mr. Poff relies on his mental impairments and provides no argument for how his physical pain was improperly discredited by relying on daily activities. Mr. Poff's only statement regarding his physical pain is that "[t]he ALJ's failure to place his pain in the proper context led to overemphasis of Plaintiff's daily activities, improperly using them to discount the ever present impact of his chronic pain and to imply that they demonstrated that he could engage in regular and continuous employment." [ECR 26 at 22-23]. He provides no argument for how the ALJ improperly discussed his physical complaints of pain, nor does he provide any evidence that his pain required further limitations in the RFC. This argument is underdeveloped and therefore waived.

The ALJ did not err in analyzing Mr. Poff's subjective symptoms or in discussing his daily activities. Mr. Poff also made several underdeveloped arguments that fail to provide this court with the evidence to review the ALJ's decision. The decision of the ALJ is affirmed.

## CONCLUSION

For those reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 7, 2021

/s/ JON E. DEGUILIO<br>Chief Judge<br>United States District Court